# History - Big League Cards

The U.S. Marshals Service *Big League Cards* ©



In the mid 1990's the U.S. Marshals Service produced a series of 'sports cards' that depicted and commemorated notable Marshals and Deputy Marshals that served their country in various historical periods of the Marshals Service existence. The cards were designed by Big League Cards ©

## Historical Themes

- Historical Timeline
- Roll Call of Honor
- Peril of Your Life
- Broad Range of Duties
- General Practitioners
- Civilian Enforcers
- Civilian Supremacy and Civil Disobedience

## Historical Information:

- Frontier Marshal: the Sculpture
- Fugitive Investigation Strike Team (FIST operations)
- Marshals Seal
- Marshals Cards
- Marshals Badges
- National Marshals Museum
- Operation FALCON
- Recommended Reading
- Remembrances
- Safe Surrender
- School Projects involving the U.S. Marshals
- USMS Directors and Predecessors



**Oklahoma Territory (1906-1910)**

Abernathy earned this nickname of "Catch 'Em Alive Jack" by capturing hundreds of wolves single handedly without ever having to kill one. He would prevent the wolves from attacking him by jamming his hands down their throats. He, of course, was also a successful U.S. Marshal.

© 1994 Big League Cards 06-B563

JOHN ABERNATHY — UNITED STATES MARSHAL

**District of Massachusetts (1791-1796)**

Brooks studied medicine before taking up arms during the Revolutionary War. He fought at Concord, where the "shot heard 'round the world" was fired. In 1791, President George Washington appointed him U.S. Marshal for Massachusetts. He was elected governor of Massachusetts in 1816.

© 1994 Big League Cards 12-B563



JOHN BROOKS — UNITED STATES MARSHAL

**District of Columbia and Maryland (1958-1975)**

During the 1960's, Butler was one of the bravest of a very brave group of deputies who helped change America

Sheriff served in the district for five years. On September 24, 1971, he and other deputies escorted a prisoner to the funeral of the prisoner's father. He was shot to death in a bloody gunfight on the church steps while attempting to thwart the prisoner's escape.

© 1994 Big League Cards 08-B563



NORMAN E. SHERRIFF
DEPUTY U.S. MARSHAL

Oklahoma Territory
(1886-1911)

The toughest of the Three Guardsmen of Oklahoma, Thomas made the hardest arrests and challenged some of the worst of the outlaws. On August 24, 1896, Thomas and his posse ambushed the notorious bank robber and murderer Bill Doolin. When Doolin fired, Thomas shot him dead.

© 1994 Big League Cards 19-B563



HENRY "HECK" THOMAS
DEPUTY U.S. MARSHAL

Oklahoma Territory
(1886-1911)

Fellow deputy Bat Masterson called Tilghman "the greatest of us all". Tilghman and his partners Heck Thomas and Chris Madsen were known as the Three Guardsmen of Oklahoma and they were instrumental in bringing law and order to the lawless Indian and Oklahoma Territories.

© 1994 Big League Cards 17-B563



WILLIAM "BILL" TILGHMAN
DEPUTY U.S. MARSHAL

District of Kansas
(1873-1876)



# Deputy U.S. Marshal Norman E. Sheriff

*United States Department of Justice - United States Marshals Service, U.S. Government*

End of Watch: Friday, September 24, 1971



**ADD TO MY HEROES**

## NORMAN E. SHERIFF

Deputy Marshal Norman Sheriff was shot and killed in Washington, DC, while guarding a prisoner who was attending his father's funeral.

The prisoner's brother had been able to disarm three of the marshals who were guarding the prisoner in the back of the Florida Avenue Baptist Church, at 623 Florida Avenue, NW. As the brother and prisoner attempted to escape from the church they were confronted by Deputy Marshal Sheriff. The suspect opened fire on the marshal, killing him.

The two fled in a car but were stopped two miles away after speeding through a radar trap and leading officers on a short chase. The officers who stopped them were unaware of the shooting at the time.

The suspect was convicted of Deputy Marshal Sheriff's murder and sentenced to life in prison.

Deputy Marshal Sheriff was survived by his wife.

https://www.odmp.org/officer/12157-deputy-us-marshal-norman-e-sheriff     3/30/2019



**Department of Veterans Affairs**
1898 FORT ROAD
SHERIDAN WY 82801

MAY 04, 2019

```
#   000008778        I=0000
```
8778 1 AV 0.380
E M SHERIFF
PO BOX 1145
RIVERTON WY 82501-0154

SUMMARY OF VA PAYMENT(S)
\*\*\*THIS IS NOT A BILL\*\*\*
IMPORTANT INFORMATION

Please note that VA payment for the below authorized non-VA health care services is considered payment in full. The provider may not bill you or your health insurance carrier for any services that were authorized and paid by VA. If you are required to make a VA co-payment for outpatient and inpatient care furnished at a VA facility, then you may also be assessed a VA co-payment for certain authorized non-VA health care.

It is important to keep VA informed of your current health insurance information, as VA may bill your insurance carrier for health care authorized in certain circumstances including care obtained through community health care providers at VA expense. Please contact the VA facility listed above if your current health insurance information has changed or you are aware of any payment made in your behalf by a private health insurance company or health benefit plan, including Medicare or Medicaid, for the same services that are listed in this letter.

Please contact the VA facility listed below as the payer for the service if you have any questions about the information on this notice or you believe that a VA payment was made in error.

During the month of APRIL 2019 the below payment(s) were made on your behalf by the identified VA health care facility:

PAYMENT(S) PROCESSED BY VA MEDICAL CENTER SHERIDAN VA MEDICAL CEN     Tel: (888)795-0773

| ITEM | PAYEE NAME | DATE(S) OF SERVICE | AMOUNT |
|---|---|---|---|
| 1 | RIVERTON MEMORIAL HOSPI | 11/13/2018 | $.00 |
| 2 | RIVERTON MEMORIAL HOSPI | 11/13/2018 | $.00 |
| 3 | RIVERTON MEMORIAL HOSPI | 11/13/2018 | $.00 |
| 4 | RIVERTON MEMORIAL HOSPI | 11/13/2018 | $.00 |

MORE PAYMENTS ARE LISTED ON THE NEXT PAGE.



Page 01 of 02

NOTICE OF VA PAYMENT(S) FOR E M SHERIFF (CONTINUED)

PAYMENT(S) PROCESSED BY VA MEDICAL CENTER SHERIDAN VA MEDICAL CEN      Tel: (888)795-0773

| ITEM | PAYEE NAME | DATE(S) OF SERVICE | AMOUNT |
|---|---|---|---|
| 5 | RIVERTON MEMORIAL HOSPI | 11/13/2018 | $.00 |
| 6 | RIVERTON MEMORIAL HOSPI | 11/13/2018 | $380.77 |
| 7 | RIVERTON MEMORIAL HOSPI | 11/13/2018 | $204.66 |
| 8 | RIVERTON MEMORIAL HOSPI | 11/13/2018 | $.00 |

TOTAL AMOUNT OF PAYMENT(S) PROCESSED DURING THE MONTH      $585.43

Thank you for your military service.

VA MEDICAL CENTER SHERIDAN VA MEDICAL CEN

**NPAS, Inc.**
P.O. BOX 99400
LOUISVILLE, KY  40269


054501-902426576-G7



001254

**ELMORE M SHERIFF**
309 N 6TH ST E
PO BOX 1145
RIVERTON, WY 82501-0154

Services Provided by:   **SAGEWEST HEALTHCARE**

| Patient Name: | Elmore M Sheriff |
| --- | --- |
| Account Number: | 7334460 |
| Service Date(s): | 11/13/2018 - 11/13/2018 |
| Statement Date: | 04/12/2019 |
| Placement Date: | 01/24/2019 |

**Contact Us**
NPAS, Inc.
Toll Free 1-800-370-1832  Espanol: 1-800-681-9692
MON-FRI 8AM-5PM EST

Please be prepared to provide the patient/responsible party full name, date of birth and mailing address. All calls may be recorded.

### INSURANCE PROCESSING ASSISTANCE REQUEST

| Total Charges | Total Pymt / Adj | Est. Insurance Balance | Est. Patient Balance | Current Balance |
| --- | --- | --- | --- | --- |
| $ 2,810.36 | $ 2,224.94 | $ 585.42 | $ 0.00 | $ 585.42 |

You currently have an unpaid balance in the amount shown above. This claim was filed with the insurance company more than thirty (30) days ago and despite our efforts, we have been unable to obtain payment from them. Please contact the insurance company and ask them to pay any benefits due per the policy. After you have contacted them, please call us at 1-800-370-1832 so that we may update the status of the account. If additional billing information is required by the insurance company, please call us at 1-800-370-1832 and advise us of the specific information that is being requested.

We are committed to working with you to obtain payment from the insurance company. However, you may be responsible for the entire balance of the account if the insurance company fails to pay the claim.

*Sent to "Joral" hospital, by VA Roselane Clinic VA authorized and bills not paid credit report damaged*

*****PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION*****



Personal

Personal and Family Life Legal Matters

Products

1-Physician Patient Relationship Law and Legal Definition

(a)The physician-patient relationship is regarded as a fiduciary relationship, in which mutual trust and confidence are essential. A physician is held to a standard of medical care defined by the accepted standards of practice in his or her area of practice. Some of the obligations of a physician's duty of due care include the obligation to fully inform the patient of his or her condition, to continue to provide for medical care once the physician-patient relationship has been established, to refer the patient to a specialist, if necessary, and to obtain the patient's informed consent to the medical treatment or operation. Confidentiality laws protect the physician-patient relationship and the patient's consent must be obtained before medical records may be released.

(b)Some courts will not impose a duty on a physician without a contract for the benefit of the patient or some affirmative act on the part of a physician. Generally, a contract or an affirmative act on the part of the physician must exist before a legal duty arises.

(c)Once the physician-patient has been established, it continues until it is ended by the consent of the parties or revoked by the dismissal of the physician, or until the physician's services are no longer needed. Without proper notice of withdrawal, affording the patient ample opportunity to seek alternative care, the physician's termination of services to the patient could be held to be an abandonment, subjecting the physician to the charge of negligence and liability to the patient for any damages proximately caused by such negligence.

(d) Physician-Patient Relationship can be defined as "a consensual relationship in which the patient knowingly seeks the physician's assistance and in which the physician knowingly accepts the person as a patient." QT, Inc. v. Mayo Clinic Jacksonville, 2006 U.S. Dist. LEXIS 33668 (N.D. Ill. May 15, 2006)

Addenum

(A) Patient abuse: Patient abuse or neglect is any action or failure to act which causes unreasonable suffering, misery or harm to the patient. Abuse includes physically striking or sexually assaulting a patient. It also includes the intentional withholding of necessary food, physical care, and medical attention.

(1)Neglect: includes the failure to properly attend to the needs and care of a patient, or the unintentional causing of injury to a patient, whether by act or omission.

(2) Patient abuse and neglect: may occur in settings such as hospitals, nursing homes, clinics and during home-based care.( Preventing doctor at clinic from signing travel order for plaintiff, to travel to medical center he has been attending and treated at for more than a decade for his old and new disabilities, for more than a decade now)

(3)Causing patient excess extreme Stress aggrevating existing medical conditions, defendant tried to stop plaintiffs recent urology surgery by defendant disallowing travel order for said necessary surgery, that had been scheduled and was only accomplished only because help of other VA personel, WRTA and US Senator Barasso of Wyoming office, fought to get patient (Plaintiff) to surgical appointment. Surgery went well, however good results are now degrading due to stress.

(4)Plaintiff has now had to open a box of self caterizaters (used before surgery), and again self catherize, and is further dealing with excessive pain in lower back for which his doctors at SLC orthopedic clinic were attempting to fix, when defendant Mr. Grote, again prevented, stopped doctors at medical center from completing their medical examinations with MRI they ordered for May 17 last attempt made by plaintiff calling clinic and advising he needed said appointed made SLC MRI dept. People trusted and known to plaintiff for other care as well. The appointment has again 3rd time been reschedled again for 6/7/19. Defendant attempted to have MRI done locally and advised his VA clinic doctor not to sigh off on Travel order. SLC MRI clinic doctors already know exactly what they are looking for and plaintiff has established a relationship over years with said dept. imaging.

(5)Defendant, who is not a DOCTOR , attempts to force and compel the plaintiff to seek other medical treatment where he wants him to go, in local setting that has already caused the plaintiff additional stress of now having to deal with a bad entry on his credit report, because VA at Sheridan did not pay for emergency visits to local hospital, that plaintiff never wanted to go to but did under order of treaus and nurse at clinic, regardless of situations at time. Plaintiff knew that you must have okay to go to local hospital emergency room and advised it was in plaintiffs interests to be checkd at local emergency room. Plaintiff followed up and just as he suspected he started to receive bills saying he owed this and that.

**(6)** Duty of confidentiality: traditionally, medical ethics has viewed the duty of confidentiality as a relatively non-negotiable tenet of medical practice. Confidentiality is an important issue in primary care ethics, where physicians care for many patients from the same family and community, and where third parties (aka Mr. Grote, often request information from the considerable medical database typically gathered in primary health care, VA Clinics

**(7)** Another way of discribing Mr. Grotes behavior towards the plaintiff Paternalistic, Paternalism being an action that limits a person's, or group's, liberty or autonomy and is intended to promote their own good (Mr. Groty). Paternalism can also imply that the behavior is against or regardless of the will of a person, or also that the behavior expresses an attitude of superiority.

(8) Freedom of choice describes an individual's opportunity and autonomy to perform an action selected from at least two or more available options, unconstrained by external parties, Mr. Grote apparently does not believe in freedom of choice.

**(9)** *Mead v. Adler*. In Oregon, an on-call neurosurgeon was consulted by an ER doctor who suspected a severe neurological disease was causing a patient's low back pain [4]. The neurosurgeon examined the patient and recommended that she be admitted but said that surgery was not needed [4]. Four days later it was determined that the patient did require the surgery, following which she was permanently impaired [4]. The patient sued the neurosurgeon who was originally consulted for damages but he defended that he owed her no duty because a patient-physician relationship had not been established. The court held that "in the absence of an express agreement by the physician to treat a patient, a physician's assent to a physician-patient relationship can be inferred when the physician takes an affirmative action with regard to the care of the patient" [4]. A patient-physician relationship was formed because the physician took an affirmative action in rendering an opinion on the course of the patient's care.

**(10)** Plaintiff wishes to keep seeing the clinics and doctors that have saved his life on more than one occasion and have continued over the last decade, to send appointments for his treatment and care at the SLC VA medical center.

**(11)** Mr. Groty doesn't seem to understand the plaintiff comes from a military family 3 US Army and One Naval officer. Two died in service to this nation, a third the plaintiff nearly died after becoming a regular Army missile technician and not knowing what kind of chemicals and asbestos he had been exposed to during his time in service.

**(12)** The plaintiff is not only a veteran who volunteered during war time, but an American Citizen subject to the rights and privileges of all American citizens. The plaintiffs health has been further deteriorating due to lack of his being able to make his appointments at for treatment at SLC VA med. Center. Again, if anything bad occurs, which is likely, it will be the fault of Mr. Groty playing doctor without a license, violating plaintiffs constitutional rights to receive his medical care.